1819.

MOORE
v.
LYTTLE.

</div>

---

## MOORE *against* LYTTLE AND GIBSON.

Whether this Court will take cognisance of a cause, where the amount in controversy does not exceed the sum of fifty dollars ? Or grant an injunction to stay execution on a judgment in a Justice's Court?

BILL for an injunction to stay execution on a judgment rendered against the plaintiff, for 44 dollars and 15 cents, before a Justice of the Peace, by default. The bill charged, that the plaintiff had a good and meritorius defence, which it disclosed, and that the default was by surprize, and is sufficiently excused, and that he had paid to the justice the sum recovered, by way of deposit, and had offered to pay

<div style="text-align:right">

*Dec. 6th.*

</div>

1819.   the costs of the suit, and to let the deposit remain with the
        justice as a security, and that the offers were rejected.
MOORE
v.
LYTTLE.

_J. L. Wendell,_ for the plaintiff.

THE CHANCELLOR.   I have great doubts whether the sum
in question is sufficient to justify the interference of this
court.   A small sum will not bear the expense and burden
of the litigation, and the remedy would be worse than the
disease.   But, perhaps, it may be more advisable to let the
objection be raised by the defendant, and the point discussed,
than to bar the door in the first instance.   I, therefore,
hesitatingly, allow the injunction, and under a doubt,
whether the demand ought not to exceed the jurisdiction of
justices of the peace, which is now fifty dollars.   The
question will be fairly opened, if the defendant chooses to
raise it.

As far back as we can trace the subject, it seems to have
been the rule of the _English_ Chancery, and which may have
been borrowed from the Court of Star Chamber, where the
same rule prevailed, (_Hudson's Treatise of the Star Cham-
ber, in_ 2 _Collect. Jurid._ 164.) that if the matter be petty or
trivial, and so not worthy the dignity of the court, the de-
fendant might demur.   It was a provision in one of Lord
_Bacon's_ Ordinances, (Rule 15.) that all suits under the value
of ten pounds, were regularly to be dismissed ; and his rules
come with the imposing character of original constitu-
tional ordinances, for the government of the practice of the
Court.

But the jurisdiction of the court was formerly, in prac-
tice, extended to very small demands.   Thus, in _Coles_ v.
_Foley,_ (1 _Vern._ 359.) it was held that a bill in equity would
lie for the recovery of ancient quit rents, though very small,
as two shillings and three shillings _per annum,_ if proved to
have been constantly paid ; and Sir _Wm. Beresford's_ case
was cited in which there had been a decree for rent of

one shilling and three pence, *per annum.* This case was as early as 1685; yet, in another case, a few years earlier, (*Fox* v. *Frost, Rep. temp. Finch,* 253.) the plaintiff had grounded his equity upon the payment of five shillings, as earnest money, to bind the alleged bargain, and on demurrer to the bill, for not having a sufficient sum to warrant a decree, the Court allowed the demurrer.

Afterwards, in 1728, we find the Master of the Rolls (*Anon. Moseley,* 47.) denying an injunction where the original matter at law was only five pounds, though, by letting judgment go by default, it had increased to fifteen pounds; he said that he had dismissed another bill on the same account, because the sum was *originally* " below the dignity' of the Court," though by neglect or mismanagement, it had amounted to a competent sum. In *Brace* v. *Taylor,* (2 *Atk.* 253.) Lord *Hardwicke* dismissed a bill at the hearing, though the defendant did not demur, as being of too small and trifling consequence for that Court, it being for the arrears of an annuity, and only six pounds fifteen shillings in amount. He referred to a case in the time of Lord *Harcourt,* where a bill was brought for tithes, and as the tithes which were due, appeared to be only of the value of five pounds, the bill was dismissed at the hearing.

The next case, which was determined about the same time, in the Exchequer, advanced the requisite sum for the jurisdiction of the Court, to ten pounds, *and upwards.* The bill in *Owens* v. *Smith,* (*Com. Rep.* 715.) was against an executor, for discovery of assets, and payment of a demand of 10*l.* 10*s.* 2*d.*, but the bill was dismissed without demurrer, and at the hearing, because the demand was " beneath the dignity of the Court."

The sum of ten pounds, fixed by Lord *Bacon,* seems at last to have been assumed as the criterion of equity jurisdiction, but then it must have been an original demand due to that amount, and not one increased to or beyond it, by default or neglect at law. This is the sum mentioned in the

MOORE
v.
LYTTLE.

books; (*Moseley's Rep.* 356. 1 *Eq. Cas. Abr.* 75. *note.*) and it is agreed, (*Moseley's Rep.* 356. and per *Price*, B. *Bunb.* 17.) that the bill for that cause may be dismissed upon demurrer, or upon motion, and we have seen that it may be, also, at the hearing. (*Vide* the form of such a demurrer, *Cur. Can.* 229.)

The note in *Eq. Cas. Abr.* and a note to the case in *Bunb.* and to *Beame's Orders in Chancery,* p. 10, state some exceptions to this limitation of jurisdiction, and lay it down, that in cases of charities, or where there is fraud, or where it is a complicated matter, the bill will be retained, though the sum be ever so small. So, it is mentioned in the first of those notes, that a bill will lie in the case of lands, where the value is of forty shillings per annum, but no authority is cited for either of these exceptions, unless it be in the case of a charity, or where the bill is to establish a right.

It is to be observed, that these sums mentioned in the *English* books, are sterling money, and fifty dollars, which is the extent of a justice's jurisdiction, very nearly agrees with the sum adopted as the standard in *England,* and would, probably, be a temperate and just limitation, and best accord with the *English* rule, which appears to be the result of long experience and sage reflection. I may safely apply to the *English* rules of practice, the observation of *Montesquieu,* in respect to the *Roman* law, " Je me trouve fort dans mes maximes lorsque j'ai pour moi les Romains." And I will venture to avail myself of another of his remarks, (*L'Esprit des Loix,* liv. 29. c. 1.) that the spirit of moderation is the spirit of good policy and of good morals, and it is always to be found between two extremes. He illustrates the truth of it by the forms of proceeding in Courts of Justice, which, on the one hand, are necessary to liberty, and on the other, ought not to be too numerous, lest they should defeat the end for which they were insti-

tuted, by rendering litigation endless, and ruining all parties under the weight of examination.

The true objection to the cognizance of small causes by this Court, is, that the litigation would necessarily be vexatious and oppressive to the suitor, and exhaust more than the subject in controversy; and it would evidently be contrary to the policy of the law in the institution of Justices' Courts, which are authorized to determine " according to law and equity." " I shall always," said Lord *Northington*, on another occasion, " be very attentive to prevent the subject from great waste of expense about matters *by no means adequate to it.*"

I have given this view of the subject, and thrown out these reflections for the consideration of the plaintiff, if his counsel shall choose to hazard the further prosecution of the suit. The injunction is allowed merely as a provisional measure, to bring up a point quite new and untouched in this Court.

<div align="center">Motion granted accordingly.</div>